## UNITED STATES v. O'NEILL BROS.

(District Court, E. D. Pennsylvania. April 29, 1903.)

### No. 2.

1. CUSTOMS DUTIES—IMPORTATIONS—LIABILITY OF CONSIGNEE.
    Defendants ordered a consignment of waste by sample, which consisted wholly of cotton from a foreign manufacturer, which waste was entitled to free entry. The manufacturer shipped waste to fill the order consigned to defendant through certain persons, who were not defendant's agents, at Suspension Bridge, which bill was indorsed to be delivered to N. When the goods arrived, N. declared, without authority, that the goods belonged to defendants, and entered them for consumption. On examination it was found that the waste was cotton and woolen mixed, and was therefore taxable for duty at 10 cents a pound. Defendants, on notification, refused to accept the waste under the contract, and it was sold for duty, resulting in a large deficiency. *Held*, that defendants were not liable for such deficiency under Act June 10, 1890, 1 Supp. Rev. St. 744, 26 Stat. 131 [U. S. Comp. St. 1901, p. 1886], declaring that all merchandise imported shall be deemed and held to be the property of the person to whom it may be consigned.

James B. Holland and William M. Stewart, Jr., for the United States.

John G. Johnson, for defendants.

J. B. McPHERSON, District Judge. This suit is brought to recover a balance of tariff duties for which the defendants are alleged to be liable. The case having been tried by the court without a jury, I find the following facts:

The defendants are merchants in the city of Philadelphia, and, as part of their business, buy and sell cotton waste and woolen waste. Shortly before October 1, 1899, they received a sample of cotton waste from the Kingston Hosiery Company, doing business in the province of Ontario, and ordered 50 bales to correspond with the sample. On October 1 the hosiery company delivered to the Grand Trunk Railway 50 bales of waste, consigned to "J. D. Lewis, Suspension Bridge, Messrs. O'Neill Bros., Philadelphia." This bill of lading was indorsed by J. D. Lewis, "Deliver to J. McI. McNiven." When the goods arrived at Suspension Bridge, McNiven entered them for consumption; declaring, among other things, that, "to the best of my knowledge and belief, O'Neill Bros., Philadelphia, Pa., are the owners of the goods, wares, and merchandise mentioned in the annexed entry." The bales were afterwards examined by a customs officer, who discovered that 4 bales were nearly all wool, and 46 bales were cotton and wool mixed, although mostly cotton. Cotton waste is admitted free of duty, while woolen waste, or woolen

and cotton mixed, is chargeable with a duty of 10 cents a pound. The net weight of these bales being 8,500 pounds, a duty of $850 was accordingly imposed, and payment was demanded from the defendants. To this they replied that their order had been given upon a sample that contained nothing but pure cotton, and that, if the bales which were shipped contained wool, the hosiery company had sent something that they had not ordered, and therefore that they did not hold themselves responsible for any duty that might be collectible upon the shipment. The goods were stored by the customs authorities for more than a year, and were then sold to enforce payment of the duty, producing the net sum of $127.28; thus leaving an unpaid balance of $722.72, for which amount the present suit is brought. So far as appears from the evidence, neither Lewis nor McNiven was an agent of the defendants, either general or special; and neither had any authority, express or implied, to enter the goods for consumption. The defendants declined to accept the bales, and paid no further attention to the shipment. They had not ordered the goods that were sent, and very properly refused to receive them, or to make themselves in any way responsible for their care or custody.

Upon these facts, it seems to me that the defendants are not liable for the balance of the duty. It is true that the act of June 10, 1890, 1 Supp. Rev. St. 744, 26 Stat. 131 [U. S. Comp. St. 1901, p. 1886], declares that "all merchandise imported into the United States, shall, for the purpose of this act, be deemed and held to be the property of the person to whom the merchandise may be consigned." It is also true that the bill of lading shows that the Grand Trunk Railway named O'Neill Bros. as the ultimate consignees of the merchandise. But under the other facts, I do not think that the act should be so construed as to embrace the present defendants. They did not import this merchandise into the United States, in the proper sense of that word. They ordered an entirely different article from the hosiery company, and, if that article had been furnished, no doubt they would have been liable for the duty with which the goods might have been properly chargeable. But I am unable to see upon what ground they can be charged for duty upon an article which they neither bought, nor accepted, nor entered for consumption. The entry at the customhouse was not made by the defendants' agent, and they cannot be held responsible for McNiven's unauthorized act. They disavowed it as soon as they knew of it, and consistently refused to pay any further attention to the goods. The government argues that they should have given the bond provided by law, and have withdrawn the goods for exportation to the hosiery company; but I cannot agree that any such obligation was imposed upon the defendants. On the contrary, as it seems to me, to have taken possession of the goods for any purpose might have been construed by the hosiery company to be an acceptance, and, at all events, would have exposed the defendants to the hazard of a lawsuit upon that ground. In my opinion, they were fully justified in the course they followed. The opinion of the Attorney General in 5 Treas. Dec. 244 (Dec. No. 23,606), does not in any respect affect the question now being considered. There the consignee received and entered

the very tobaccos he had ordered, but, because the wrappers and fillers were improperly packed together, he was obliged to pay a higher duty than would have been otherwise chargeable. He had "imported" the goods, and the law fixed him with liability. Here, however, the defendants did not order these goods to be sent into the United States, did not enter them, and have never exercised any act of ownership over them. In a word, the defendants did not "import" the goods, and never intended to import them.

I conclude, therefore, that the defendants are not liable for the amount sued for, and that judgment should be entered in their favor.